The opinion of the court was delivered by
Nicholls, C. J.
The petitioning sureties base their , right of action upon Art. 3057 of the Oivil Code, which authorizes sureties under certain conditions enumerated in the article, even before making any payment, to bring suit against the debtor to be indemnified by him. The second paragraph of the article authorizes the .bringing of such a suit “when the debtor has become a bankrupt or is ■in a state of insolvency.”
The remedy granted by the article cited is universally recognized as being a departure from the general rule announced in Art. 15 of the Oode of Practice that “an action can only be brought by one having a real and actual interest which he pursues, but as soon as *1137 that arises he may bring his action;” and hence it is not to be extended by analogies. Its exercise is strictly restricted to the special eases provided for.
Laurent, Vol. 28, Sec. 257, says.:' “Tout-le monde reconnait que c’est par dérogation aux principes et par des considérations d’équité que la loi permet a la caution d’agir alors qu’elle n’a pas encore payé: oh les dispositions exceptionelles ne s’étendent pas meme par voie d’analogie.” [See Dalloz & Verge under Art. 2032, No. 10; J. G. Cautionnemejat, 282].
The surety does not become a creditor of the principal by the simple fact that he has entered into an engagement by which he may ultimately be made to pay money for or on his own account. He becomes a creditor only by the fact of payment. The plaintiff sureties are not creditors of the administrator Norres. They are neither creditors of the succession of Hayes nor are they heirs in that succ cession.
It has been held that a party who has no interest in a succession can not interfere in its administration (Field vs. Mathieson, 3 Rob. 38; Succession of DeArmas, 1 Rob. 461; King vs. Lastrapes, 13 An. 582; Randall vs. Bank, 17 La. 273; Macarty vs. Bond’s Administrator, 9 La. 355; Succession of Connolly, 5 An. 753; Succession of Tuthill, 14 An. 645.
If the administrator of the succession of Hayes permitted Déeuir and others to hold possession of the funds of that succession and to apply them to the payment of claims which they held against him— “under illegal bargains and arrangements between them” — that was a matter which may concern the heirs and creditors of the succession, but it is one in which, up to the present time at least, the sureties on the administrator’s bond have not a direct legal personal interest. The funds so misapplied by illegal payments, bargains or arrangements did not and do- not belong to Norres, their assumed debtor. They can not, by anticipation, attack those acts or claim back that money. The remedy granted to a surety is one which he exercises in his personal name by virtue of a right belonging individually to himself and in nowise for or on account of the creditor nor by virtue of a right of action borrowed by anticipation from the creditor.
■. Laurent, Vol. 28, See. 261, says: “On a soutenu que la caution avait le droit en vertu de 1’Article 2032, O. N., d’exercer les actions *1138 du créancier contre le débiteur. C’est une de ces opinions étranges qui tendent a faire un nouveaux Code Civil. Elle n’a pas trouvé faveur; la Oour de Cassation répond et la réponse est peremptoire qu’il n’existe pas en droit franpais de subrogation antieipée, ni totale ni partielle, le paiement réalisé étant toujours la condition premiére d’une subrogation quelle qu’elle soit. Aussi n’y a-t-il pas un mot dans 1’Article 2032 qui ait trait a une action de subrogation. La loi donne seulement a la caution le droit d’agir contre la débiteur pour étre par lui indemnisée; la caution exerce ce recours en son nom personnel en vertu d’un droit qui lui est propre et nullement pour le compte du créancier ni en vertu d’une action qu’elle emprunterait par anticipation a celui-ci. En définitive il n’y a pas une ombre de subrogation dans I’espece. [Cassation, 19 Decembre, 1872 — Dalloz, 1873, 1-38 ”].
We are of the opinion that the sureties on the bond of Nones have [as they have proceeded herein] no right of action against Décuir, Dérouen, Hébert and David; that they have no legal warrant to attack any payments, bargains, arrangements or contracts between them and Norres as to succession funds. They are not entitled to intrude themselves into a succession and attempt to direct or control the administrator in the discharge of his duty or to call his acts in question. That, as we have said, is a matter for heirs and creditors to deal with. Whatever action they may have against the party for whom they have become sureties [under Art. 3057] of the Civil Code is to be made available and enforced outside of the succession through a separate independent action against him personally. The situation is not changed by some of the heirs permitting them to join them in a proceeding which they are directing against the administrator. Their presence in such a suit multiplies parties and complicates issues in a manner totally unauthorized. Though the ultimate object sought to be attained by the heirs and the sureties might be the same — the securing of the faithful administration of the affairs of the succession, it would none the less be sought to be effected by parties acting upon different théories and lines and independent causes of action. Where the heirs and creditors of a succession are themselves moving for the protection of their own interests there is less reason and necessity for the exercise of rights granted to sureties and heirs under Art. 3057 than there would be if those parties were remaining silent and inactive. (See Laurent, Vol. 28, Sec. 253; Duranton, Vol. 18, p. 383.) We think *1139 that the judgment of the District Oourt is correct in so far as its effect was to dismiss the suit to the extent that it was based or predicated upon the demands made therein by the sureties upon the administrator’s bond.
We now examine the suit, as if one brought by the heirs alone, in manner and form as brought against the defendants. The petition in the case is so exceedingly vague and uncertain that it is almost impossible from it to ascertain what the complaints of the heirs really are. We know nothing of the situation of the succession prior to the homologation of the final account and tableau of the administrator.
There are certain things, however, which are sufficiently clear— the first is that the plaintiffs are without interest in championing the rights of creditors and heirs, whose rights or claims may have been bought up by the defendants, Dérouen, Décuir, David and Hébert. If parties have been unfairly dealt with they must themselves make their complaints heard. So long as the debts advanced against the succession were real valid debts, it was a matter of indifference to the heirs whether they should be paid to the creditors themselves or the assignees of those creditors. Another matter is that the plaintiffs can not, after the administrator’s accounts have been approved and homologated and creditor’s rights have been admitted thereon, go back of the homologated account and tableau to question the existence, validity and amount of the claims. If objections there were to any of the claims which were advanced, they should have been urged by way of opposition to the accounts prior to homologation. Plaintiffs by acquiescing in the amounts fixed in their respective favor in the final tableau as those due themselves, as heirs, recognize as valid the payment of all sums, which by reason of being so paid out as for succession debts, have left the balance no larger than it is. They can not attempt now to swell their distributive shares.
Eliminating from the petition the features we have just referred to, plaintiffs’ complaints, as well as we can make them out, are that the administrator holds in point of fact no part of the moneys for which he recognizes himself to be responsible, as shown by his final account and tableau. That he has misapplied them entirely. That plaintiffs themselves are able to account for and do account for a part of the misapplied funds. That Norres, the administrator, in some way (the particular way not being disclosed or specified) allowed the defend *1140 ants Déeuir, Dérouen, David and Hébert to have possession of part of ' the funds of the succession, instead of depositing them in a bank as he should have done. That subsequently some of the parties having purchased the interests of certain of the heirs were permitted by the administrator to be paid the distributive shares due to the heirs, of whom they were assignees, out of the succession moneys which were in their possession. That the administrator being personally indebted to some of the four named defendants, permitted and consented that they also pay themselves those debts out of the same succession funds. That through these payments so made Déeuir and others have absorbed the entire moneys whose misapplication is explainable and left the plaintiffs as heirs with a mere paper claim against the administrator Norres, who is now absolutely insolvent. They object to being driven to an action against the sureties on the administrator’s bond While the four parties named have received either partial or entire actual payment. They contend that under the conditions stated the payments made to Déeuir, Dérouen, David and Hébert should be decreed illegal and set aside, and that the moneys which they have been permitted to apply to the purposes stated should be held as being still in their hands subject to be reclaimed in action of repetition by the heirs as being moneys of the succession which the administrator had no right to use as .he did. The relief and remedy to which they consider themselves entitled is disclosed in the prayer of their petition. They ask that each of the plaintiff heirs have an absolute judgment to the amount of the distributive share coming to him from the succession, as shown by the homologated account and tableau, against the administrator, Norres and Déeuir, Derouen, David and Hébert in solido. That, in addition to this, the six plaintiffs have judgment against and recover from these same parties in solido for the full amount of what are claimed to have been the illegal payments permitted to have been made to them by the ad - ministrator. That this judgment should be executed in the name of the plaintiffs, but under a clause which they desire should be inserted in the judgment (and reproduced or inserted in the writ of execu - tion) ; that the sheriff, upon receiving moneys under the execution, should not pay them to the plaintiffs in the writ, but deposit them in a bank in Iberia “ to the credit of the administrator, Norres, subject to be drawn out only on his. check in favor of the heirs to whom the moneys were due as per tableau of distribution,”
Before attempting'to analyze the demands of, the plaintiffs, we *1141 observe that this is not a proceeding ruling an administrator, who has not yet been discharged, into court to show cause why hé should not be ordered under penalties to deposit the funds he has in his hands into bank, subject to the orders of the court. The administrator is charged with being now insolvent and the object of the present proceeding is through suit, judgment and execution against third parties to obtain a certain amount which is to be deposited in bank, not by the administrator, but by the sheriff. Again, this is not an attempt to place into a bank, under' control of the court, a small balance of misapplied succession funds, which plaintiffs seek to recover and have applied “ pro rata" among the heirs or to have brought back and "prorated" among all the heirs, payments which had been made to.particular heirs or their assignees upon their distributive shares upon the ground that both the administrator himself and the sureties on his bond were insolvent and therefore those payments worked to their injury.
If judgment be rendered as prayed for and funds should go into the hands of the sheriff, plaintiffs propose before they reach the bank to appropriate at once a part of the same to themselves in full payment of the separate judgments which they seek to obtain in this suit and which they already hold. The effect of this would be to disengage the plaintiffs from all further interest in the succession and drive the defendants who hold as assignees of some of the heirs into an action against the sureties on the bond (who are perfectly solvent for all that appears) instead of plaintiffs being obliged to do so themselves. They desire simply that the present position of parties be shifted. But let it be assumed that the judgment had been rendered and executed as prayed for and that moneys had been collected and deposited under the execution as asked. For whose account and for whose benefit would the fund be there? No persons other than the plaintiffs have appeared and declared themselves aggrieved by the present condition of affairs. We are not informed which heirs remain unpaid, or how much remains due to them. Non constat but that the court would be ordering the collection of funds for which there would be no claimants. We see no authority under which the plaintiffs seek to have judgments obtained and moneys collected for unknown and unnamed heirs. They allege no such authority.
The administrator has not only filed an account, but he has also filed a tableau of proposed distribution to the heirs. He-has-under - *1142 taken to fix their rights according to what they would be, if, as between the succession and the heirs, there were no claims to settle. He has substantially made a partition for the heirs (provisional if not definitive) through his tableau should the heirs on being cited make no appearance to contest by intervention or opposition the proposed distribution and to require that the administrator hold the funds until through a partition the rights of the heirs inter se be .liquidated, and all matters of collation disposed of. An administrator, when he has paid off the debts of the succession, is bound to turn the balance of the funds over to those entitled to them. He ascertains to the best of his ability who those parties are and what their rights in the funds are, and proposes to make a distribution accordingly. He calls all parties into court to raise objections, if any they have, to his doing so. Quoad the administrator the payments so intended are a distribution or division of succession funds, not a partition among heirs (Rachal vs. Rachal’s Heirs, 10 La. 458). The heirs may permit it to become substantially a partition if they remain inactive. When the account and tableaufiled in this case were homol-ogated each heir acquired a separate distinct judgment with a right of separate remedy. No judgment against Norres in the present suit would give them any more thoroughly recognized and liquidated rights than they now hold. Each heir was perfectly competent and authorized to take care of his own interests and exercise his own remedies. It is intimated by the heirs that they must exhaust all their remedies, before they are permitted to have recourse upon the sureties on an administrator’s bond. The law has a provision to that effect (R. S., Sec. 1781) ; but this refers to matters in which the sureties have a legal interest. If the amounts which the administrator pays out are paid out to parties who are entitled legally to receive them, the sureties on his bond are not concerned in any mere equality in the distribution of the funds. If there should be an illegal deficiency of funds to pay all those entitled to receive, the sureties would be responsible for that deficiency, and it would be a matter of indifference to them whether suit be brought against them by one particular heir rather than another.
'J Again, while it is the duty of parties having rights in, to or against a succession to exhaust their remedies before going upon the sureties on the bond of the administrator, it is not intended that each one should exhaust anything more than his own remedy, and to the extent of his own rights.
*1143 To each of these suing heirs was attributed on the tableau a cer - tain fixed amount declared to be due as the proposed distributive share of the parties named, in the succession of Hayes. When the account was homologated, the amount so set apart became a separate judgment in favor of each party named, enforeible separately in favor of each after due demand, as provided for by Article 1057 of the Oode of Practice.
The distributive shares of the six suing heirs amount in the aggregate to the sum of four hundred and sixty-eight dollars and nineteen cents ($468.19), the largest amount due to any one of them being the sum of two hundred and seven dollars and forty-eight cents.
Assuming, therefore, that it was either the duty or the right of these six parties to act in conjunction as they seek to do against Norres and the other defendants, the whole extent of their interest in the matters of which they complain would not exceed four hundred and sixty- eight dollars and nineteen cents, with legal interest thereon from the date of the homologation of the tableau. That would be the whole amount applicable to the satisfaction of their claims if it were true that the payments to Déeuir, Dérouen, Hébert and David should be set aside, and the funds paid to them were held to come rightly under the grasp of executions to be issued in their favor. It is not claimed that there has been any mere pre-tence of payment to the parties named — there is no question of simulation or want of reality in the payment. The action of these parties is in the nature of revocatory action to undo the payments, and subject to the extent of their respective claims the amounts to be recovered. Granting that payments in money of his own debts by an administrator, made to the knowledge of his creditor with succession funds, could be set aside when, at the time of the payment, the administrator was not, to the knowledge of the creditor, insolvent — if at all (0. O. 2135), the united interest of the six plaintiff heirs in the improper payments would involve an amount below the appellate jurisdiction of this court. Matters have (so far as these heirs are concerned) gone beyond the point where the amount of the succession is the test of our jurisdiction.
Waiving, for the moment, that view of the matter, let us examine into the charges made against the four defendants. As against DécuirTit is charged that he, on March 15, 1893, retained and paid himself one amount of two thousand two hundred and ninety-one *1144 dollars and one of two hundred and fifty-one dollars, and on two dates not specified one amount of sis hundred and fifty dollars and another of seventy-five dollars, for debts due him by Norres personally, but what part Hébert took in the matter of these payment is not set out. Of Hébert it is charged he retained and paid himself the sum of one thousand nine hundred and forty dollars for debts due to himself and members of his family by Norres personally, but what part Déeuir took in the matter of those payments is not set out.
No specifications are made at all as to David and Dóroueu, or as to the part taken by them in the matter of the payments which were made.
The defendants, as we have seen, excepted to plaintiffs’ demand on the ground of misjoinder of parties, both plaintiffs and defendants. They deny the right of the plaintiffs to couple a charge or demand against anyone of them with charges or demands against other parties with whom they have no connection. We have examined the petition with reference to this exception. Its averments, as we have said, are of the vaguest character. There is no specification whatever as to how the various defendants became connected with each other — no detail of the facts from which solidarity of obligation between them can be claimed to have arisen, though there are a number of general allegations of fraud and wi’ong-doing,which are mere conclusions of law.
The only allegation we have found which would in the least charge privity between the defendants is that in which it is declared that “ the administrator had by illegal and wrongful agreements between himself on the one part, and Déeuir, Hébert, Dérouen and David, allowed said parties to have possession and use ‘ jointly ’ of the said moneys (moneys of the succession), they agreeing to give same to him whenever needed to meet claims against- the succession,” but in a later portion of the petition it is declared that “ all the credits in favor of Déeuir and all said charges made by Hébert were made with the consent of Norres, and in pursuance of illegal, tortious and fraudulent agreements ” between Norres and the said Déeuir and Héb=rt respectively, which said agreements and the said credits and charges thereunder, and each of them, were made known to, acquiesced in and consented to by the others of the above named defendants and made their contracts by agreement.
Plaintiffs, even in their briefs, have not attempted to explain to us *1145 what the original relations of the four defendants were to the administrator and as between themselves — how and in what manner they became connected with each other and what the theory of their case is. ■
We think that the allegations made as to a “joint use” by the defendants of succession funds is simply a legal deduction drawn by the plaintiffs themselves from a state of facts not disclosed.
We do not thick it permissible for the defendants to be joined in this suit under such sweeping indefinite allegations as plaintiffs have made. If it were right and proper that any particular defendants should be held in court, it would be impossible for us to say which particular defendant should be selected.
• For the reasons herein assigned the judgment appealed from is hereby affirmed.
Bkeaux, J., takes no part.