In addition to that, the time within which he might act has expired, and a notice has been served terminating the reference. Under such circumstances, I think an attempt should not be made to send a case back to the referee, but that the parties must submit to the misfortune of a mistrial. In Reynolds v. Insurance Co., 6 App. Div. 254, 39 N. Y. Supp. 885, where the justice who tried the case had made an incomplete or insufficient decision, and thereafter had been appointed to the appellate division, it was held that the case could not be sent back to the trial court to supply the defects in the decision, and that the parties must submit to a mistrial. This case seems to be quite as strong for the moving party. The motion to vacate the judgment is therefore granted, with $10 costs, and the application to have the case sent back to the referee for further findings or decision is denied.

Motion granted, with $10 costs.

---

(32 Misc. Rep. 370.)

### KILBY v. FIRST NAT. BANK OF CARTHAGE et al.

(Supreme Court, Special Term, Jefferson County. August, 1900.)

1. BANKS AND BANKING—PUBLIC FUNDS—DEPOSITS—EMBEZZLEMENT.

M. was president of defendant bank, and embezzled money belonging to a town of which he was a railroad commissioner, but, before absconding, gave his note to the bank to cover this shortage, and the bank's receiver, in assessing stock, included such shortage among the debts to be paid by the bank. *Held,* that the facts showed that M. had deposited the money in the bank, and hence embezzled it by virtue of his position as president of such bank, and not as railroad commissioner, and hence the bank was liable therefor.

2. OFFICERS—LIABILITY—PUBLIC MONEY.

A board of railroad commissioners, who deposit public money in a bank, become guarantors and insurers of its repayment; and each member is individually liable therefor, if lost through such bank's failure.

3. SET-OFF—DEPOSITS—INSOLVENT BANK—DEMAND—NECESSITY.

Where plaintiff seeks to offset a certificate of deposit against a debt owing an insolvent bank, the fact that he fails to make a formal demand for the deposit will not bar his right to the set-off.

4. SAME—NOTES DUE INSOLVENT BANK.

Plaintiff, who was surety for the repayment of certain sums deposited in defendant bank, which were due and payable at the time of the bank's suspension, owed certain notes to the bank, which became due before a receiver was appointed for such bank. Owing to the time required to fix plaintiff's liability, he did not pay the creditors for some time after suspension. *Held,* that payment will be deemed to relate back, and to have been made at the time of suspension, and the amount so paid may be set off against the notes held by the bank against plaintiff.

5. SAME—EQUITY—SURETY—RIGHT TO SET-OFF.

Where a party executes a guaranty for the payment of sums deposited in a bank to which he is indebted, which sums are due and payable at the time of the bank's suspension, equity will give him credit on his indebtedness for the payments made because of the bank's failure to do so, whether he is regarded as a surety, and becomes subrogated to the rights and claims of the depositors, or simply that by the bank's failure and default he became liable for such sums.

Action by Allen E. Kilby against the First National Bank of Carthage and another. Judgment for plaintiff.

W. M. Rogers, for plaintiff.
John N. Carlisle, for defendants.

HISCOCK, J. The First National Bank of Carthage was wrecked by the criminal conduct and defalcations of its president, one Myers. Some time prior to May 3, 1898, it was discovered that said Myers had been guilty of criminal misconduct, and had misappropriated and wasted the funds of said bank; but in the hope of repairing the damage and loss which he had occasioned, and by and with the consent of the bank authorities, said bank was not closed until said last-mentioned date, although it was insolvent before that. Upon said last-mentioned date the bank closed its doors or suspended its ordinary business, and the bank examiner and the United States, on behalf of and by direction of the comptroller, took possession thereof and of its assets, and so continued until the appointment of the defendant Smith as receiver, which took place November 17, 1898. At the time of its suspension said bank was the holder of a note dated December 3, 1897, payable three months after date, for the sum of $312.58, which was made by one Kellogg and indorsed by plaintiff. Said Kellogg is and was insolvent, and no part of said note has ever been paid. In like manner and at the same time said bank was the owner and holder of a note for $4,900, dated December 8, 1897, payable six months after date, and made by plaintiff, no part of which has been paid, save a small amount of interest. Also, said bank was the owner and holder at said time of another note, dated December 15, 1897, payable six months after date, for the sum of $5,000, made by plaintiff, and no part of which has been paid. It will thus be observed that all of said notes had become due before the defendant Smith was appointed receiver, and that only one of them was past due when said bank closed its doors as aforesaid. At and before the date of said suspension the village of Carthage had deposited in said bank the sum of $1,306.98, known as the "Waterworks Fund," and there was due on account of said deposit at said date said sum of $1,306.98. As a condition of the making of such deposit by the treasurer of said village, the plaintiff and said Myers had been required to execute an undertaking, in effect, that said bank would, among other things, pay back said moneys when required or desired. On or about February 16, 1898, the treasurer of Jefferson county had deposited with said bank the sum of $3,000, receiving therefor a certificate of deposit payable on the return of said certificate properly indorsed; and this certificate upon the 3d of May, 1898, was outstanding and wholly unpaid, although upon that date the same was presented at said bank for payment, and payment thereof demanded. On or about February 2, 1897, for the purpose of procuring such a deposit as this, the plaintiff and several others had executed to said county treasurer of said county a guaranty of payment by said bank of any moneys that said county treasurer might deposit in said bank, either in open account, or as represented by certificates of deposit. On and for some time prior to May 3, 1898, the plaintiff and one Penniman and said Myers were railroad commissioners of the town of Wilna, and in their

account with said town, at least, were to be charged with having on hand the sum of $5,000, with which to pay and take up the maturing bonds of said town. The question is at issue whether, as a matter of fact, said balance of $5,000 had ever been deposited to the credit of said commissioners in said bank. If it had been, it had all been drawn out by said Myers prior to the suspension of the bank, and none of it was on hand; and the question is then next presented whether he had so drawn out and dissipated said moneys as a railroad commissioner, or as an officer and president of the bank, so that the latter is to be charged with having said amount of money still on hand. June 25, 1898, the plaintiff, by reason of his undertaking and guaranty for the repayment by said bank of moneys deposited in it by the village of Carthage, above mentioned, did pay to the trustees of said village, on account of the moneys on deposit in said bank at the time of its failure, the sum of $1,306.98. In like manner, August 30, 1898, on account of his undertaking for the repayment of moneys deposited by the county treasurer of Jefferson county in said bank, the above-mentioned plaintiff did pay to said treasurer or his representatives the sum of $428.57. On August 30, 1898, the plaintiff and his fellow railroad commissioner, Penniman, were compelled to advance money amounting to $3,050 with which to take up railroad bonds of the town of Wilna, properly payable out of the $5,000 with which the plaintiff and his fellow railroad commissioners were chargeable as hereinbefore mentioned; the amount paid by plaintiff being $2,050. At the time of making these several payments, plaintiff demanded of the authorities in charge of the bank that the amount so paid should be applied as an offset upon the past-due obligations then held by the bank against plaintiff, and hereinbefore mentioned.

There is substantially no dispute of fact in this case, except with reference to the moneys claimed by plaintiff to have been deposited in said bank to the credit of the railroad commissioners, of which he was one, and in regard to who is responsible for the embezzlement of said moneys in case they are held to have been deposited in the bank. Upon these questions I feel warranted by the evidence in deciding in favor of the contention made by plaintiff. The account of said railroad commissioners with said bank extended over several years. In view especially of the manipulation thereof by said Myers, it is more or less complicated and intricate, and quite a large amount of evidence has been addressed by the respective sides to these matters. Without stopping to review it in detail, I think it reasonably and fairly appears that said bank had received upon deposit, to be put to the account and credit of said railroad commissioners, various sums, which, charging said account with the sums properly and legitimately and honestly drawn out of said bank by or in behalf of said railroad commissioners, should have left a balance of $5,000 to the credit of said account and commissioners at the time when the bank suspended. This being so, it is conceded that said balance had been misappropriated and embezzled by Myers, and was not on hand. Such embezzlement, I think, was committed by him by virtue of his position and powers and opportuni-

ties as an officer of the bank, and not as a railroad commissioner. It is not claimed that either plaintiff or the other commissioner knew anything of the transactions by which Myers appropriated this money. There is no evidence of any such authority conferred by them upon Myers as makes it seem reasonable to me to charge them with his acts in drawing money out, but it rather seems to me more reasonable to hold that, being the president of the bank, and being in control of its books and assets and funds, he took the money after it had got into the bank, and concealed his operations and his crimes by various entries upon and manipulation of the bank books. As bearing upon these questions, the following facts are perhaps worthy of special comment: Before Myers absconded he gave the bank his note, covering, among other things, this shortage of $5,000; and the receiver, in calling an assessment of 90 per cent. upon the stock of the bank, included among the debts of, and to be paid by, the bank, this shortage of $5,000 in the railroad commissioners' account. Plaintiff, as a stockholder, has, upon the demand of the defendant, been actually assessed to make up this amount which it is now urged by defendants is not an indebtedness of the bank at all.

I now pass to the legal questions involved in the demand made by plaintiff for a set-off of the amounts paid by him against the amounts due from him..

So far as the moneys deposited by the village of Carthage and the county treasurer of Jefferson county are concerned, plaintiff was, by express undertaking, a surety for their repayment by the bank. By operation of law he was, in effect, a guarantor and insurer of the repayment of the moneys deposited in said bank by the railroad commissioners. Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375, 34 L. R. A. 678. The moneys deposited in this account were the property of the town. Certainly, as between plaintiff and the bank, the former was surety for the latter. His legal undertaking when the moneys were deposited was that, if the bank did not repay them when demanded, he would, either by settling with the town directly, or by repaying them to himself and associates as railroad commissioners, make their account with the town good for the amount thereof. The relation between him and the bank was, "If you do not make this account and deposit good, I must." And, whatever may have been his joint liability with the other commissioners, he was also individually responsible for the whole amount. Therefore at the time when the bank suspended plaintiff was responsible for its repayment of these three deposits. The deposits proper were payable upon demand, and the certificate practically so. There is evidence of a presentation of the certificate upon the day of suspension, but my attention has not been called to any demand upon the deposits. That is immaterial, however, as, in an equitable action of this kind, failure to make a formal demand will not be allowed to bar equitable relief to which a party is otherwise entitled. Richards v. La Tourette, 119 N. Y. 54, 23 N. E. 531. So that the indebtedness from the bank upon which plaintiff seeks an offset against his indebtedness due to the bank was due and payable at

the time of its suspension, which is an essential requisite; it being immaterial that the indebtedness to the bank became due later. In re Hatch, 155 N. Y. 401, 50 N. E. 49.

But it is urged that, although plaintiff made the payments on account of these three deposits before the defendant receiver was appointed, still it was after the bank had suspended, and that therefore they are not available to him, as against what he owed at the date when the bank suspended. Davis v. Knipp, 92 Hun, 297, 36 N. Y. Supp. 705. The case presented in and covered by that decision is different from this one. There the debtor owing the bank went onto the street after its suspension, and bought up a claim to which he had held no previous relation, for the express purpose of using it as an offset. To allow such a procedure would manifestly be unjust to other creditors, and should not be tolerated. But that is not this case. If I have been right in my prior conclusions, the defendant bank, at the moment when it suspended, owed three accounts, which in this action are to be deemed then due and payable. It was insolvent and could not pay them, and plaintiff, by express agreement and otherwise, was individually liable to make good every dollar of every deposit. He had a right to treat his responsibility as then accrued and fixed, and could have pursued the bank for the total amount of all the deposits. Clute v. Warner, 8 App. Div. 40, 40 N. Y. Supp. 392. As a matter of fact, some time was taken to adjust his liability with the parties to whom he was bound to make good the deposits, and to fix and liquidate his individual responsibility in the case of two of them. This, however, was all done in pursuance to and in recognition of a liability which existed at the date of suspension; and for the purposes of this action the payments will be deemed to relate back, and to have been made as of that date. Rice v. Southgate, 16 Gray, 142. So that, in conclusion, we have plaintiff, as of the date when the bank suspended, becoming liable for the amount of three deposits which he was bound to make good when the bank defaulted, and in liquidation of that liability paying the sum of $3,785.55, which he asks to have offset on what the bank or its receiver holds against him. It seems to me that he is entitled to this relief; that whether it be regarded that as a surety for the bank he has paid up in part these deposits, and become subrogated to the rights and claims of those to whom they belonged, or simply that by the failure and default of the bank he became liable for a certain amount, which he has liquidated and paid, in either event equity will give him credit upon his indebtedness for his payment thus made. Blumenthal v. Einstein, 81 Hun, 415, 30 N. Y. Supp. 1126.

Criticism has been passed upon the fact that the bank was kept open for a period after its president's crimes were discovered, and that plaintiff did not discover the latter's manipulation of the railroad commissioners' account. Doubtless there were errors and omissions which could be corrected if opportunity were afforded for so doing. That is generally so. There is, however, no question about the good faith and right purposes of this plaintiff, and the

evidence in these respects suggests no reason for refusing to him the relief to which I think he is otherwise entitled.

Findings and judgment in accordance herewith may be prepared, with costs to plaintiff. Judgment accordingly.