LION BONDING & SURETY CO. v. AUSTIN, Commissioner of Insurance and Banking. (No. 2050.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 2, 1919.)

1. DEPOSITARIES ⊜⊃8—INSOLVENCY OF COUNTY DEPOSITORY—PREFERENCE TO COUNTY—STATUTES.

Under Rev. Civ. St. art. 2440 et seq., and the Bank Deposit Guaranty Law, a county which deposited its funds in bank held not entitled to assert any superior claim over other creditors in distribution of assets of bank after its insolvency.

2. PRINCIPAL AND SURETY ⊜⊃177—STATUS OF SURETY AS CREDITOR—PAYMENT OF DEBT UNDER COMPULSION.

The mere fact that a bonding company was a bank's surety did not in law make it a creditor of the bank with which the county had deposited funds.

3. BANKS AND BANKING ⊜⊃63½—CLAIM AGAINST INSOLVENT BANK—ACQUISITION AFTER ADMINISTRATION IN INSOLVENCY.

Bonding and surety company sued by commissioner of insurance and banking, administering insolvent bank, on bond of whose cashier surety company had gone, held not entitled to offset against commissioner claim against bank arising from judgment against it, the surety company, on its guaranty of bank as county depository, which claim against bank was acquired after commissioner's administration had begun.

Appeal from District Court, Gregg County; Daniel Walker, Judge.

Suit by Chas. O. Austin, Commissioner of Insurance and Banking, against the Lion Bonding & Surety Company. From judgment for the commissioner, defendant appeals. Affirmed.

Thomas, Milam & Touchstone, of Dallas, for appellant.

Edwin Lacy, of Longview, for appellee.

HODGES, J. This suit was filed by Charles O. Austin, commissioner of insurance and banking, against G. N. Campbell and the appellant, Lion Bonding & Surety Company.

---

⊜⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The appeal is from the judgment in favor of the commissioner for the sum of $5,000.

The record shows the following facts: On and prior to February 18, 1916, the People's State Bank & Trust Company, incorporated under the laws of Texas, was doing a general banking business at Longview, Gregg county, Tex. G. N. Campbell was its cashier; and on the date above mentioned he executed a fidelity bond in the sum of $5,000, with the appellant as surety. A few months thereafter the bank became insolvent by reason of the misappropriation of a large amount of its funds by the cashier and another party. In this suit Campbell made default, and has not appealed from the judgment rendered against him.

Among the defenses pleaded by the appellant is a counterclaim a little in excess of the amount sued for, which is urged as an offset against the plaintiff's demand. It appears that during the year 1916, and while the People's State Bank & Trust Company was apparently solvent, it was selected by Gregg county as the legal depository of its funds, for which the bank was to pay the county 4 per cent. per annum on daily balances. The appellant became the surety of the bank on the bond executed to secure those deposits. In August, 1916, the bank became insolvent, and its affairs were taken over by the commissioner of insurance and banking under the provisions of the state banking laws. Among the depositors who then held claims against the insolvent bank was Gregg county. Its claim, amounting to something more than $60,000, was classified in March, 1917, as an ordinary debt entitled to no preference. In November, 1916, Gregg county filed a suit against the People's State Bank & Trust Company and the appellant, upon the bond that had been given to secure the county deposits. Some time later the county dismissed as to the bank, and prosecuted the suit to a judgment against the appellant. That judgment recited that upon a payment by the appellant it should be subrogated to all the rights held by Gregg county against the funds of the People's State Bank & Trust Company then being administered by the commissioner of insurance and banking. Some time thereafter the appellant satisfied the judgment by paying something over $5,000. It now pleads that payment as the basis of a legal and equitable counterclaim which should offset the demand here sued on. The refusal of the court to allow that counterclaim is the error assigned in this appeal.

It is contended that, having paid the debt of its principal due to Gregg county, the appellant became subrogated to all the legal rights which Gregg county, as a creditor, could assert in the distribution of the assets of the insolvent bank. It is argued that Gregg county, being a subdivision of the state, does not occupy the attitude of a common creditor, but may claim a priority which belongs inherently to the state as the sovereign when participating in the distribution of an insolvent estate. This argument is based, not upon any statutory provision, but upon a rule of the common law as interpreted by the courts. Reference is made to numerous decisions rendered by the courts of other states which apparently sustain the view that the state, by virtue of its sovereignty, is entitled to claim a preference right in the distribution of the assets of an insolvent estate. But in none of those cases has it been held that this sovereign remedy belongs to the counties. While the common law was long ago adopted in this state, it has been so frequently modified, either expressly or by implication, that it becomes our duty to consult appropriate legislative provisions and ascertain to what extent the common law has been superseded. In 1905 the Legislature enacted a law which authorized the counties to select county depositories. See article 2440 et seq., Rev. Civ. St. The purpose of that act was to enable counties to derive a revenue from their accumulated funds by loaning them to banks and individuals doing a banking business. It prescribes with much precision the character of security which a county should take in order to insure protection against the insolvency of the depository selected. Article 2451 empowered the commissioners' court of a county, when it deemed the county funds unsafe, to require additional security of its depository; and when this was not furnished the county funds might be withdrawn and committed to another depository. These precautions appear to be the extent to which the counties were authorized to go in protecting themselves against loss. Nowhere is it provided in that act that in the event a depositor became insolvent a county should have a superior right in the distribution of its assets. There was also enacted in 1905 a state banking law which, with its subsequent amendments, appears to have been intended as a complete system for the creation, operation, and dissolution of state banks. That law is contained in title 14 of our present Revised Civil Statutes. In 1909 what is known as the "Bank Deposit Guaranty Law" was enacted, and is now incorporated in chapter 5 of title 14. In this chapter are to be found numerous provisions relating to the collection, preservation, and distribution of the assets of insolvent state banks and trust companies. Article 453 authorizes the commissioner of insurance and banking to take charge of and wind up the affairs of an insolvent state bank or trust company. Article 454 prohibits the creation by the bank of any form of preference among its creditors after the commissioner has taken charge of its affairs. Article 456 empowers the com-

missioner, upon taking charge of the bank's affairs, to collect outstanding debts due the bank and to perform such other acts necessary to conserve the bank's assets, and directs him to proceed to liquidate the affairs of the bank or trust company in accordance with the provisions or law. Article 486, after providing for an immediate payment to the state's guaranty fund from the available assets of the insolvent bank, contains the following:

"Provided, that deposits upon which interest is being paid, or contracted to be paid, directly or indirectly by said bank, its officers or stockholders, to the depositors and deposits otherwise secured, shall not be insured under this chapter, but shall only receive the pro rata amount which may be realized from the assets, resources and collections of and from such banks and trust companies, its stockholders or directors."

Article 487 gives the state a first lien on the assets of the insolvent bank or trust company for the benefit of the depositors' guaranty fund, and concludes with this provision:

"Provided, however, that any deposits on which said bank was paying interest and any other deposits or debts not insured under this chapter, and which are entitled to share in the assets, shall share in the dividends and proceeds of such assets and collections pro rata or as may be provided by law."

Article 551 makes it unlawful for a state bank or trust company to make a voluntary assignment of its affairs. Such institutions, upon finding themselves in a failing condition, must place their affairs in the hands of the commissioner of insurance and banking. The remainder of this article seems designed to prohibit any form of creating a preference among the creditors of an insolvent bank or trust company.

[1] Considering these different provisions of the banking law, the conclusion seems irresistible that the Legislature intended that all claims held against an insolvent bank, except that in favor of the state's guaranty fund, should share according to the same percentage in the distribution of the remaining assets. When adopting these various restrictions and provisions for preserving equality among the creditors of insolvent banks and trust companies, the Legislature could not have been unmindful of the fact that under the County Depository Law counties would likely be among the creditors of such institutions, yet no special exception seems to have been made in favor of the claims of counties. The absence of some such exception, in view of the comprehensive provisions which exclude claims founded upon interest-bearing deposits and those provisions which are evidently designed to preserve equality among unprotected creditors, is too significant to be without a purpose. Having made provision by which counties were enabled, if not required, to secure full protection against the insolvency of depositories, there seems to have been no reason for exempting counties from the sweeping provision of article 487, which expressly places the holders of interest-bearing claims upon a plane with common creditors. Regardless of what the common-law rule may be in other states, we are of the opinion that under our statute counties are not entitled to assert any superior claims over other creditors in the distribution of the assets of any insolvent bank or trust company which had been selected by it as a county depository. If Gregg county had no superior claim, then the appellant succeeded to none by subrogation.

[2, 3] The appellant never in fact acquired any claim against the insolvent bank until it satisfied the debt recovered against it by Gregg county. It appears that this was done after the affairs of the bank had passed into the hands of the commissioner of insurance and banking and were being administered. The mere fact that it was the bank's surety did not in law make it the bank's creditor. It could not become such till it had paid something for which it might claim reimbursement in the distribution of the bank's assets. By merely paying the debt under compulsion for which it was a surety, the appellant's attitude is not materially different from what it would have been had it voluntarily purchased the claim at that stage in the administration of the bank's affairs. It seems to be a well-settled rule that one who is sued by a trustee charged with the administration of an insolvent estate will not be permitted to offset the demand sued on with a claim against the insolvent acquired after the administration had begun. Guthrie v. Guthrie, 17 Tex. 543; Northcraft v. Oliver, 74 Tex. 162, 11 S. W. 1121. While that rule has its exceptions, the facts of this case do not bring it within the spirit of any that have been announced. Smalley v. Trammel's Adm'r, 11 Tex. 10; Dickenson v. McDermott's Ex'rs, 13 Tex. 248. To permit the appellant in this instance to offset against the demand here sued on with the claim acquired from Gregg county would enable it to secure an illegal advantage over other creditors in the distribution of the assets of the insolvent bank. What one cannot do directly the law will not permit to be done indirectly. Equity is no respecter of persons; one creditor cannot in its name invoke a rule that would operate as an injustice toward another creditor entitled to the same consideration.

The judgment of the district court will be affirmed.