ROBERT L. LEACH, State Superintendent of Banking, Appellant, v. JAKE BASSMAN, Appellee.

No. 39673.

NOVEMBER 12, 1929.

*John Fletcher,* Attorney-general, and *Ben J. Gibson,* for appellant.

*E. S. Tesdell,* for appellee.

STEVENS, J.—Appellant is the receiver of the Commercial Savings Bank of Des Moines, to which the appellee was, on December 31, 1924, indebted upon three promissory notes, upon which, at the time of the trial, there was a balance of $2,500 due. The execution of the notes is admitted by appellee. By way of cross-petition, appellee alleges that, on or about June 8, 1924, he became surety on the bond of the said Commercial Savings Bank, executed by it as principal, to the Independent. School District of Des Moines, to secure its deposits therein; that, on December 31, 1924, the bank ceased to do business, and its affairs were taken over by the superintendent of banking, as receiver; and that not to exceed 50 per cent of the claims of depositors will be paid by said receiver. He prays that his liability, when ascertained, on the bond to the school district be set off against his said indebtedness to the bank. Subsequently, a settlement was had of the liability of appellee as surety on the bond, as the result of which he paid the school district $2,500. By way of an amendment to the cross-petition, he prays that this amount be set off against the balance due on said notes. The cause was tried upon an agreed statement, with a decree awarding the prayer of the cross-petition and directing the receiver to surrender the notes to appellee.

The sole question involved is the claimed right of appellee to a set-off. The settlement by appellee and other sureties of their liability on the bond with the school district was effected subsequent to the appointment of the receiver. Although it is alleged in the cross-petition that the bank was insolvent at the time of and prior to the execution of the bond, no proof was offered on this point. The parties agree that, if the indebtedness in favor of appellee did not arise until after the insolvency of

the bank and the appointment of the receiver, no right of set-off exists.

It is also conceded that, if the claim of appellee to a set-off rests wholly upon the equitable doctrine of subrogation, no such right exists. Appellee concedes that the holding of this court in *Leach v. Commercial Sav. Bank,* 205 Iowa 1154, is conclusive on this point. Appellant, however, argues that the decision in that case goes much further than appellee is willing to admit.

The proposition relied upon by appellee for affirmance is that the relation of creditor and debtor arose between himself, as surety on the bond, and the bank, as principal, immediately upon its execution; that the law implies an obligation on the part of the principal to pay the  debt or to reimburse the surety, if he is compelled to do so. The right of a creditor of an insolvent bank to set-off is limited to a pre-existing indebtedness: that is, the insolvent must have been indebted to the person claiming a right of set-off at the time the insolvency occurred. This is well settled in this state. *Leach v. City-Commercial Sav. Bank,* 207 Iowa 1254; *Partch v. Boyle,* 197 Iowa 1314; *Partch v. Russell,* 199 Iowa 1049.

There is some diversity of judicial opinion as to whether the relationship of creditor and debtor arises between principal and surety immediately upon the execution of the instrument. It is universally held, however, that, if the surety is compelled to pay the debt of his principal, he may at once commence an action at law against him to recover the amount. It is clear in this case that no such action could have been maintained by appellee against the bank at the time it became insolvent.

The right of set-off, if any exists in this case, is equitable, and not legal. Ordinarily at least, an action in equity will not lie in favor of the surety prior to the maturity of the obligation which he has assumed. It is the prevailing doctrine, however, that a surety, after the debt for which he has become liable has become due, may, without paying the same, by an action in equity, compel the debtor to exonerate him from liability for its payment, unless some right of the creditor's will be prejudiced thereby. *Des Moines B. & I. Wks. v. Plane,* 163 Iowa 18; *New England Eq. Ins. Co. v. Boldrick,* 192 Iowa 763; *West*

*Huntsville Cotton M. Co. v. Alter,* 164 Ala. 305 (51 So. 338);
*Holcombe v. Fetter,* 70 N. J. Eq. 300 (67 Atl. 1078); *Guernsey
v. Marks,* 55 Ore. 323 (106 Pac. 334); *Craighead v. Swartz,* 219
Pa. St. 149 (67 Atl. 1003).

The reasons for this rule are obvious. It does not, however,
necessarily follow therefrom that the relationship of creditor
and debtor is thereby established. An express promise on the
part of one to pay an obligation to another, of course, creates
the relationship of debtor and creditor. In such case, the creditor
may not enforce the obligation before maturity in an action at
law. Is not the implied obligation of the principal which he
assumes at the time the relationship is created, to reimburse the
surety for all sums that he may be required to pay on his under-
taking, in all essential particulars the equivalent of an express
obligation? The distinction, as applied in cases of the character
we are considering, if any, must be found in the fact that the
right to maintain an action at law is postponed until the actual
payment of some part of the liability by the surety. The obliga-
tion of the surety to the obligee is express, and no implication
of law is necessary, to give it effect. As between the surety and
the principal, the primary obligation is that assumed by the
latter. His obligation is, in a sense, twofold: that is, to dis-
charge the debt to the creditor according to the terms of his
promise, and also to relieve the surety from secondary liability.
The exact question before us has not previously been passed
upon by this court, but it seems to us in harmony with the over-
whelming weight of authority that the relation of creditor and
debtor arises immediately upon the signing by the surety of
the obligation, because of the implied promise of the principal
to reimburse him in case he is compelled to pay the same. As
was said by the Massachusetts court in *Rice v. Southgate,* 16
Gray (Mass.) 142:

"* * * it is clear that the contract of a principal with his
surety to indemnify him for any payment which the latter may
make to the creditor, in consequence of the liability assumed,
takes effect from the time when the surety becomes responsible
for the debt of the principal. It is then that the law raises the
implied contract or promise of indemnity. No new contract is
made when the money is paid by the surety, but the payment
relates back to the time when the contract was entered into by

which the liability to pay was incurred. The payment only fixes the amount of damages for which the principal is liable under his original agreement to indemnify the surety.''

See, also, 1 Brandt on Suretyship and Guaranty (3d Ed.), Section 228.

The rule thus stated is supported and reaffirmed in the following cases: *Griffin v. Long,* 96 Ark. 268 (131 S. W. 672); *Danforth v. Robinson,* 80 Me. 466 (15 Atl. 27); *Momsen v. Noyes,* 105 Wis. 565 (81 N. W. 860); *Kahn & Bro. v. Bledsoe,* 22 Okla. 666 (98 Pac. 921); *Maryland Cas. Co. v. Hjorth,* 187 Wis. 270 (202 N. W. 665); *Craighead v. Swartz,* 219 Pa. St. 149 (67 Atl. 1003); *United States Fid. & Guar. Co. v. Centropolis Bank,* 17 Fed. (2d Ser.) 913 (53 A. L. R. 295); *Richardson v. Merritt,* 74 Minn. 354 (77 N. W. 234); *Scott v. Timberlake,* 83 N. C. 382; *Kilby v. First Nat. Bank,* 32 Misc. Rep. 370 (66 N. Y. Supp. 579); *Fidelity & Dep. Co. v. Duke,* 293 Fed. 661; *Henningsen v. United States Fid. & Guar. Co.,* 143 Fed. 810; *West Huntsville Cotton M. Co. v. Alter,* 164 Ala. 305 (51 So. 338); Pingrey on Suretyship and Guaranty (2d Ed.), Section 174.

As opposed to the holding of these cases, the following have been called to our attention: *Derouen v. Norres,* 49 La. Ann. 1131 (22 So. 669); *Lion Bond. & Sur. Co. v. Austin* (Tex. Civ. App.), 208 S. W. 542.

The effect of the payment by appellee was to determine the extent of his liability. No new or separate indebtedness arose at that time. The implied obligation on the part of the bank to reimburse him therefore existed from the beginning of the relationship. The right of subrogation arises only upon the payment of the debt, or some part thereof, and, according to the rule in this state, does not relate back. This is the extent of the question involved and decided in Leach against the bank, relied upon by appellant.

The decree of the trial court awarding the set-off was right, and it is affirmed.—*Affirmed.*

Albert, C. J., and De Graff, Morling, Wagner, and Grimm, JJ., concur.