**SHAW, Banking Com'r, et al. v. SNYDER INDEPENDENT SCHOOL DIST. et al.**

**No. 1183.**

Court of Civil Appeals of Texas. Eastland.

Dec. 22, 1933.

Rehearing Denied Jan. 26, 1934.

Ocie Speer and Jay H. Brown, both of Austin, for appellants.

Stinson, Hair, Brooks & Duke and Wagstaff, Harwell, Wagstaff & Douthit, all of Abilene, for appellees.

FUNDERBURK, Justice.

The First State Bank & Trust Company, of Snyder, Tex., was, at the time it became insolvent, the depository for Snyder independent school district, owing the latter a little more than $20,000. Ernest Taylor, together with H. P. Wellborn and Sam Hamlett, was surety for the bank on the depository bond. Taylor owed the bank personally a note for $10,000, and, being a stockholder, was liable as such, for the benefit of the creditors in the sum of $24,900. After the affairs of the bank were taken over by the banking commissioner for liquidation and the stockholders' assessments made, Taylor, under sanction of an order of the district court, deeded a number of tracts of land to the banking commissioner in full settlement and discharge of the $10,000 note, and the $24,900 stockholders' liability. The deed was made in pursuance of a contract which provided in part as follows: "It is agreed and understood that the First State Bank & Trust Company was depository for the Snyder Independent School District, and Ernest Taylor, Sam Hamlett, and H. P. Wellborn, sureties on the bond of said bank to secure the deposits of said district have been sued on said bond, and that said sureties will undoubtedly be liable on said bond for a large amount of money for the reason that said defunct bank will make default in the payment of said funds to the extent of probably 75 percent of said deposit. In view of this fact, it is the contention of Ernest Taylor that he and the other bondsmen are entitled, by law, to direct that the sum paid on his said note, be by the Special Agent, paid to the School Board at Snyder to apply as a credit on the liability of said bondsmen on said bond. It is therefore agreed that the said Ernest Taylor for himself and the other bondsmen, to-wit, H. P. Wellborn and Sam Hamlett, does not waive any equitable or legal right he or they may have to direct and require the proceeds of his said note above described to be paid to the School Board on its deposit, and thus applied as a credit or setoff against the liability of said bondsmen on said bond by reason of the default of said First State Bank & Trust Company, principal on said bond, and neither the said Ernest Taylor, nor the other bondsmen shall be estopped from hereafter asserting any legal or equitable right that they, or any of them have under the law, prior to the delivery of said deeds, to have the proceeds of said note, or the proceeds of the property above described applied in full to the payment of the debt due the Snyder Independent School District by said First State Bank & Trust Company. It being understood that the said A. J. McKinnon, Special Agent, does not admit the right of setoff, but it is the intention of the parties that Ernest Taylor shall not hereafter be estopped from asserting any equitable or legal right of setoff he now has in the premises, because of this conveyance and settlement."

This suit was brought by said Snyder independent school district against James Shaw, banking commissioner, A. J. McKinnon, special agent, the First State Bank & Trust Company, Ernest Taylor, H. P. Wellborn, and Sam Hamlett to ascertain the amount of plaintiff's deposit, and to recover against each and all the defendants, jointly and severally, such amount, and to have decreed and fore-

closed an equitable lien on the land conveyed as aforesaid by said Taylor to the banking commissioner.

Defendant Ernest Taylor filed his cross-action agreeing to the contentions of the school district, averring that his said contract with the banking commissioner provided that the proceeds of the land which he conveyed "should be applied on the Snyder Independent School District and offset against the said $11,000.00 note (meaning the above described note for $10,000), and said property was so conveyed for that purpose and agreed to be devoted in that way if same could legally be done." His prayer was "that the funds arising from the sale of the property so conveyed by him be applied to the Snyder Independent School District debt, and that same be offset against the $11,000.00 debt, and he here now, as heretofore, directs the same to be done, and asks the court that in the judgment rendered in this cause that the Snyder Independent School District be given a lien on said property to the extent of said $11,000.00 debt," etc.

Upon the trial, the court gave judgment in favor of the school district against said sureties on the depository bond for the sum of $20,539.33, and against the other defendants, including the banking commissioner, for a foreclosure of a lien on said land. The banking commissioner, A. J. McKinnon, special agent, and the First State Bank & Trust Company have appealed.

As we see it, two questions are presented for our decision: (1) Does the contract in pursuance of which Taylor conveyed certain lands to the banking commissioner in full settlement and discharge of his liability to the bank on his $10,000 note, and of his liability as a stockholder to the creditors of the bank in the sum of $24,900, by its terms require the banking commissioner to apply the proceeds of said land on the debt due by the bank and the sureties on its depository bond to said school district? (2) If said contract does so provide, is the provision valid and enforceable in this suit?

■ It is not necessary to determine whether, if Taylor, instead of paying his indebtedness to the insolvent bank and to the creditors represented by the banking commissioner by the conveyance of the lands, he had paid the debt for which he was liable as surety for the depository bank, he could have set off the amount so paid against the $10,000 note due the bank. He did not pay anything to the school district, and the question of what his rights would have been had he done so is entirely outside the scope of the present inquiry. It seems plain enough to us that the contract under which Taylor, by conveying his lands, paid his debt to the insolvent bank and also his stockholder's liability, does not even purport to bind the banking commissioner to apply the proceeds of the land in payment of the debt due by the bank and its sureties to the school district. The agent of the banking commissioner making the contract therein expressly refused to agree that such proceeds should be so applied. All the contract provided was that it and the conveyance of the land thereunder should constitute no waiver of such right, if any, or estoppel to assert same; it being recited that "said A. J. McKinnon, Special Agent, does not admit the right of set-off," etc. Hence it is clear that the validity of Taylor's claim of right of set-off must stand or fall on its own merits with neither aid nor hindrance from the contract. All that Taylor gained by the contract by way of possible aid to his assertion of said right was that he would not be met with any plea of waiver or estoppel. We therefore pass to a consideration of the second question.

■ If we have accurately stated the only questions presented, and have reached the proper conclusion upon the first of said questions, it would appear that the second is rendered immaterial. But, even if the contract should be construed as evidencing an agreement of the banking commissioner to apply the proceeds of the land on the debt of the school district, in our opinion he had no legal authority to make such an agreement. The school district had only the right to share pro rata with other depositors in the assets of the insolvent bank. If Taylor had paid his entire debt due the bank and the banking commissioner in cash, and without any agreement concerning application of the money, there would, of course, be no contention that the commissioner could apply more of the money on the debt owing the school district than its pro rata part of all the assets of the bank. The reason why he could not is the fact that by so doing there would result a preference which the law prohibits. Such a preference would result no less certainly if the application were made in pursuance of an agreement. To us it seems too plain for argument that the banking commissioner and a debtor of an insolvent bank cannot by their mere agreement make lawful such a preference. Appellees recognize, as they must, that the application insisted upon cannot be made if it in fact works a preference; hence they seek to answer the argument by the contention that the right of offset if made would not result in a preference. Let us consider then if it would or not.

Under the facts of this case, as we view them, no right of set-off can possibly exist. If A owes B a debt, and B owes A a debt, and the right of set-off be unquestionable, there can nevertheless be no set-off if one of said debts be paid in full before the right of set-off is claimed. To the extent that a debt is paid, and thereby ceases to exist as a debt, it is not available to offset another

debt. When Taylor delivered his deed to the banking commissioner, he thereupon ceased to owe the insolvent bank or the banking commissioner anything. His debt due to the insolvent bank, and his debt due to the creditors of the bank by reason of his being a stockholder, were as completely wiped out and rendered nonexistent as if he had handed the full amount to the banking commissioner in money. There was, therefore, no debt with which he could offset the debt, if any, owing by the bank to him by reason of his being the bank's surety on its bond. This proposition is so self-evident and elementary that it seems to us to call for no search for precedents. To attempt, therefore, to use the money, or its equivalent, after it had discharged in full a debt due to the insolvent bank to apply in payment of another debt due a creditor of the bank, which, without such payment might have been offset one against the other, would simply be to prefer the creditor receiving the money.

In the briefs the parties have argued principally the question of whether Taylor could have the right of set-off claimed by him without his having paid anything upon his debt to the school district. Appellants insist that in no event could such right exist without such payment. The appellees contend that the bank's indebtedness to Taylor by reason of such suretyship arose from the creation of the relation of principal and surety so as to be enforceable in equity. This is a sharply controverted question and one which by reason of our conclusions above stated we never get to in this case. But, if we were called upon to decide it, we regard the decision in Lion Bonding & Surety Co. v. Austin (Tex. Civ. App.) 208 S. W. 542, 544, as decisive. Therein the court said: "The mere fact that it," speaking of the party whose position was the same as Taylor's here, "was the bank's surety did not in law make it the bank's creditor. It could not become such till it had paid something for which it might claim reimbursement in the distribution of the bank's assets." All authority will perhaps agree that, if the debt sought to be used to offset did not come into existence until after the insolvency of the bank, the right of offset does not exist. According to the last-mentioned opinion, written by one of our soundest judges, a surety does not become a creditor of his principal until he pays the debt secured, and, if such payment is made after the principal becomes insolvent, the surety occupies the same relation to the assets of the insolvent principal regarding the right of set-off as one who purchases a claim against an insolvent after insolvency. Although this is the only Texas case we have found so holding, it is not in conflict with any other decision in this state that we have found, and is well supported by decisions in other jurisdictions. Richardson v. Anderson, 109 Md. 641, 72 A. 485,

25 L. R. A. (N. S.) 393, 130 Am. St. Rep. 543; White v. Henly, 54 Mo. 592; Chance v. Isaacs, 2 Edw. Ch. (N. Y.) 348, affirmed 5 Paige (N. Y.) 592; Groff v. Friedline, 14 Misc. 237, 35 N. Y. S. 755; Nettles v. Huggins, 8 Rich. Law (S. C.) 273; Tibbetts v. Weaver, 5 Strob. (S. C.) 144; Mack v. Woodruff, 87 Ill. 570; Granger's Adm'r v. Granger, 6 Ohio, 35. Some of these reports are not available, and the holdings have been taken from the note in 40 A. L. R. page 1096. Relative to this point, the Supreme Court of the United States, in U. S. F. & G. Co. v. Wooldridge, 268 U. S. 234, 45 S. Ct. 489, 69 L. Ed. 932, 40 A. L. R. 1094, in effect held that it makes no difference whether the debt arises when the surety pays the obligation insured, or whether upon a payment which relates back and arises as of the time the obligation of suretyship is created; that, in either case, where, as is true of an insolvent bank, preferences are prohibited, there can be no offset. This decision, as we interpret it, is grounded on the proposition that, where the debt sought to be offset constitutes a fund in which creditors share ratably, the right of offset, being an equitable and not a legal right, is not available because of its effect to defeat the collateral rights of third persons lawfully acquired.

The opinion of the Attorney General relied upon by appellees, if correct, is not regarded as an authority determinative of the questions in this case. The principal difference between the transaction involved in the Attorney General's opinion and the one here is that, in the former, the sureties would not pay their debts to the insolvent bank until the banking commissioner agreed that he would pay off the debt of McLennan county, for which they were the sureties, while in this case Taylor did pay off his debt to the insolvent bank without an agreement of the banking commissioner to pay off the debt for which he was liable as surety. In the Attorney General's opinion it was held, or assumed, that, if the sureties on the depository bond paid the bank's debt to McLennan county, the debt arising from such payment in their favor against the bank would be one that could be set off against their personal debts owing the bank. In this holding the opinion is in conflict with Lion Bonding & Surety Co. v. Austin, supra, and the other cases cited. But, as before said, this question is not one necessary to the determination of the instant case. Had Taylor refused to deed his property to the banking commissioner, or otherwise to pay his debt to the bank, unless and until the commissioner agreed to pay the same amount to the school district, and the contract between them had so provided, the Attorney General's opinion would be in point on the question to be decided.

It being our conclusion that the court below erred in sustaining the claimed right of set-off, resulting, in so far as its effects are

complained of on this appeal, in erroneously decreeing the existence and foreclosure of a lien on the land, it is our opinion that said judgment of the court below should be affirmed, except in so far as it declares the existence and decrees a foreclosure of a lien on said land, and in the last-named respect the judgment should be reversed and here rendered for the appellants, which is accordingly so ordered.