### Wytheville.

### STATE SAVINGS BANK v. BAKER.

#### AUGUST 4, 1896.

Absent, Harrison, J.

1. PRINCIPAL AND SURETY—*Accommodation Endorser—Release by Extension of Time.*—An endorser of a negotiable note for the accommodation of the maker is a surety of the maker, and if the time of payment is extended for the maker, without the consent of such endorser, by a binding agreement between the creditor and the maker, the endorser is released.

2. PRINCIPAL AND SURETY—*Two Notes for Same Debt—Credits—Release.*—If the negotiable note of two or more makers upon which there is an accommodation endorser, is delivered as collateral for the note of one of the makers, and both notes are given to secure the same debt, delivered at the same time, and as parts of the same transaction, then all payments made on either note should go to the credit of both, and an extension of time to the principal on the collateral note, by a binding agreement with the creditor, without the consent of the endorser, releases the endorser.

Error to a judgment of the Hustings Court of the city of Roanoke, rendered June 22, 1893, on a motion for a judgment, wherein the plaintiff in error was the plaintiff, and the defendant in error and others were the defendants.

*Affirmed.*

This was a proceeding by motion in the name of the State Savings Bank against the four makers, and the endorser, of a negotiable note for $550. The makers having failed to appear and make defence, and "the plaintiff having proved its claim to the satisfaction of the court," judgment was en-

tered against them, and, at a subsequent term, a judgment in favor of the endorser against the holder. There does not appear to have been any pleadings on the part of the defendants. The record states that "this day came the parties, by their attorneys, and announced ready for trial, and thereupon came a jury, to-wit : * * * (who) were sworn the truth to speak upon the premises, and having heard the evidence and argument of counsel, retired to their room to consider their verdict, and after some time returned into court the following verdict, to-wit : 'We, the jury, find for the defendant and release him from all responsibility in the payment of said note.' "

The note sued on was a negotiable note in the usual form, for $550, made by four makers, and endorsed by Wm. F. Baker. Baker had waived protest of the note. This note does not appear ever to have been renewed, but was deposited by Thomas G. Penn, one of its makers, as collateral security for another note made by Penn, for the same debt, bearing the same date, and payable within the same time, to-wit, ninety days. This collateral note was several times renewed and though there was some conflict of evidence, the jury were evidently of opinion that these renewals were made without the consent of Baker, the endorser of the original note. The only consideration paid for these renewals was the payment of the discount for the time the renewals had to run. Two credits were endorsed on the collateral note, one for $243.43, and the other for $50, but no credits were endorsed on the original note in suit.

*McHugh & Baker*, for the plaintiff in error.

*Watts, Robertson & Robertson*, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

On May 5, 1892, Thomas G. Penn and three others made their joint note for $550, payable ninety days after date, to the order of Wm. F. Baker, negotiable and payable at the Commercial National Bank of Roanoke, which was endorsed by Baker, and taken by Penn to the State Savings Bank of Roanoke for discount, which was refused by the bank. But it was proposed by the bank, and agreed to by Penn, that if he (Penn) would execute his own note for $550, payable to the State Savings Bank ninety days after date, and deposit with the bank the note of $550, made by Penn and others and endorsed by Baker, and also 100 shares of the Eastern Building and Loan Association stock of Syracuse, New York, as collateral security for the note then executed by Penn, or any indebtedness of Penn to the bank, the bank would discount his note. The note was accordingly drawn up and signed by Penn, as agreed, bearing date also May 5, 1892. The note contained a provision which authorized the State Savings Bank to sell the collateral securities, or any part thereof, for cash, at any time, at public or private sale, at the bank's discretion, without advertising the same or giving Penn any notice, and to apply so much of the proceeds as might be necessary to pay the note, or any other indebtedness of Penn, to the bank. When the two notes became due, Penn desired an extension of the time for payment, and obtained from Baker on the back of the note upon which he was endorser, a waiver of notice and protest; whereupon the bank gave Penn an extension of thirty or sixty days within which to pay his note, Penn paying the discount thereon; and from time to time an extension of thirty or sixty days was given Penn upon his paying the discount required by the Bank.

Before the note endorsed by Baker became due, according to its tenor and effect, the State Savings Bank sold the Building and Loan Association stock, deposited by Penn as collateral, and the proceeds, $242.43, were credited on the note endorsed by Baker, as he claims, before he endorsed thereon

a waiver of protest, and subsequently the note endorsed by Baker was sold by public auction in front of the State Savings Bank, and purchased by F. A. Barnes, president of the bank, at the price of $50, but was turned over according to the statement of Barnes to the bank, in order, as he says, to evade the law.

Afterwards, at the March term, 1893, of the Hustings Court of Roanoke, the State Savings Bank proceeded by motion, upon notice under the statute, against Penn and others as drawers, and Baker as endorser on the note, which will be spoken of hereafter as note number one; and, at the March term, 1893, a judgment by default was entered against the drawers, but the cause was continued as to Baker to the June term, 1893, when a trial was had upon the issue joined. After the evidence was all in, the court instructed the jury as follows:

" 1st. The court instructs the jury that if they believe from the evidence that the note payable to W. F. Baker, and endorsed by him, signed by Hannabus Dunger, Henry, and Penn, and the note payable to State Savings Bank and signed by said Penn were both delivered to State Savings Bank at the same time, and were given to secure the same debt, then they must be taken together, all as parts of the same transaction; and if they further believe from the evidence that after the debt secured by said note became due, an extension of time was given, for valuable consideration, by said bank to said Penn, without the consent of said W. F. Baker, then said Baker is released from all liability on said note, and they must find for the defendant."

" 2d. If the jury believe from the evidence that W. F. Baker is liable at all on said note (under instruction number one), then they can only find a verdict for the amount remaining unpaid on said note after deducting the amounts paid by Thomas G. Penn on the indebtedness secured by said note."

The giving of these instructions constitutes the plaintiff's second and third bills of exceptions.

The verdict of the jury was for the defendant, and the plaintiff moved the court to set the verdict aside and grant it a new trial, on the ground that the verdict was contrary to the law and the evidence, which motion was overruled, and to this ruling the plaintiff took its first bill of exceptions.

The first assignment of error in the petition for the writ of error awarded by one of the judges of this court is as follows: " The instructions complained of, and especially that set forth in bill of exceptions number two, are based on the opinion of the court (clearly expressed in the instruction, and yet more clearly and fully stated in the oral charge to the jury explanatory of the instruction), that the holder of accommodation paper cannot use, as collateral security, paper on which he is the maker, or one of several makers."

This assignment, and the able argument of counsel in support of it, is founded upon a misconception of the question involved. It was not whether the maker of accommodation paper could use it as collateral security, but whether in the transaction between Penn (the maker of the notes numbers one and two) and the State Savings Bank, the notes were both delivered to the bank at the same time, given to secure the same debt, and each as a part of the same transaction, and whether or not the bank had extended *credit* to the principal, Penn, without the consent of the endorser, Baker, whereby Baker was released from liability on the note number one.

In the case of *Dey* v. *Martin*, 78 Va. 1, it was said by Lewis, P.: " There is no doubt that, by the indulgence granted the maker of the note, the appellee as endorser thereon was discharged. An endorser of a note is a surety for the maker; and the doctrine is well established that any change in the contract, however immaterial, and even although it be for his advantage, discharges the surety, if made without his consent."

"An agreement to give time to the principal gives rise to the presumption that the surety has been delayed or hindered in the use of his rights and remedies, which is absolutely conclusive, and cannot be overthrown by the most convincing proof that nothing has really been lost by the delay."

When the obligation of the surety is for the debt of the principal, if the time of payment is, without the consent of the surety, by a binding agreement between the creditor and principal, extended for a definite time, the surety is discharged. The reason is, that the surety is bound only by the terms of his written contract, and if those are varied without his consent it is no longer his contract, and he is not bound by it. Brandt on Suretyship, section 296; *Alcock* v. *Hill*, 4 Leigh 622; *Dey* v. *Martin, supra; Christian & Gunn* v. *Keen*, 80 Va. 369; *Burson* v. *Andes*, 83 Va. 445; *Miller* v. *Stewart*, 9 Wheat. 680; *Smith* v. *United States*, 2 Wall. 219.

When we come to examine the evidence, it will be seen that it is conclusively shown that notes numbers one and two were delivered to the bank at the same time, to secure the same debt, and as parts of the same transaction, and that an extension of time had been granted by the bank to Penn, the maker of note number one, as well as number two. These facts fully justified the instruction complained of, and we are therefore of opinion that it was proper to be given.

We are also of opinion that instruction number three was clearly applicable to the case, because there certainly can be no doubt that, if Baker was not relieved by the extension of time given without his consent, he was entitled to have every payment made upon the debt which his note was given to secure, credited on the judgment, if any, to be given against him.

The testimony of Baker is to the effect that he endorsed note number one for accommodation; that he never intended

that it should be used as collateral by Penn, or authorized it to be so used; he never consented to any extension of time being allowed to the makers of note number one; that he knew nothing of the existence of note number two, or any other, except the note he endorsed; he did sign the waiver of notice and protest endorsed on note number one, but did not consent to an indefinite extension of time, nor to any extension whatever; that Penn was present and asked Barnes to extend the note for thirty or sixty days, and that he (witness) simply said nothing. Baker further testifies that, at the time he endorsed a waiver of protest, there was a credit in pencil on the back of note number one for $243.43; that he did not see note number two or know of its existence until after the institution of the suit, and that the credit of $243.43 was not then on note number one. In all this Baker is corroborated by Penn, who was examined as a witness on his behalf, and who testifies to the effect that notes numbers one and two were delivered to the bank at one and the same time, and as parts of the same transaction; that when the Building and Loan Association stock was sold he consented to the sale being made, and saw the credit of the proceeds of sale, $243.43, endorsed on the back of note number one; that the note was renewed three or four times, and on each occasion witness paid the discount, but Baker was not present at any of the occasions when the renewals were negotiated and effected, and that he never informed Baker that he had used the note number one as collateral to note number two, and that when the bank discounted note number two, to which note number one and the Building and Loan Association stock were placed as collateral, witness received of the amount of the notes of $550 only $460, the bank having taken $90 as the discount for the first ninety days.

The testimony of Barnes, the only witness examined for the plaintiff, and which is not at all definite, does not con-

tradict that of the defendant upon the most vital points. It cannot be said that the verdict of the jury was either without evidence to sustain it, or against the evidence. The contrary, we think, fully appears.

We are of opinion that there is no error in any of the rulings of the court below, and its judgment is therefore affirmed.

*Affirmed.*