Statement.

---

# Richmond.

## BARNES v. BARNES' ADMINISTRATOR.

### January 17, 1907.

1. EVIDENCE—*Shop Books—Impeachment.*—Shop books are received in evidence to prove accounts simply from necessity. They are at best unsatisfactory and subject to close scrutiny. When their general correctness or integrity have been impeached they are no more worthy of confidence than a witness whose reputation for truth and veracity is impeached.

2. INSOLVENCY—*Set-Offs.*—It is error to decree in favor of the personal representative of an insolvent creditor against a debtor who is bound as surety for him for a much larger amount.

Appeal from a decree in chancery of the Circuit Court of New Kent county. Manley H. Barnes, administrator d. b. n. of M. C. Barnes, filed his bill in said court against John A. Barnes and others, the general object of which was to get the court's instruction in the administration of the estate of his decedent. Subsequently, in his character of administrator as aforesaid, he filed a petition in the cause setting up a note for $250.00 and a store account for $304.08, for which he sought a personal decree against John A. Barnes. In his petition he says: "Your petitioner is advised that by reason of the fact of this honorable court having once acquired jurisdiction in the premises, with all of the said parties before the court, he cannot be heard to prosecute his said claims in another forum." Defendant answered the petition denying the indebtedness, and upon the issue thus made, evidence was taken. From an adverse decree the defendant appeals.

*Reversed.*

*Ashby & Reed,* for the appellant.

*Norvelle L. Henley,* for the appellee.

WHITTLE J., delivered the opinion of the Court.

This appeal involves the correctness of a decree in favor of the appellee, the administrator of M. C. Barnes, deceased, against the appellant, J. A. Barnes, for the principal sum of $554.08, which includes a store account for $304.08 and a note for $250.00.

M. C. Barnes was a son of the appellant, and died intestate and insolvent in the year 1903; and his administrator instituted a suit in equity to administer his estate. In that suit the plaintiff filed a petition asserting the foregoing demands against the appellant. J. A. Barnes, in his answer to the petition, denied that he was indebted to the estate of his son on account, but to the contrary alleged that M. C. Barnes was indebted to him at the time of his death, that he had fully paid the account, and was entitled to credits which had not been allowed. With respect to the note to Walker and Barnes, respondent says that there was a final and complete settlement between himself and H. B. Walker, acting for Walker and Barnes, long after the note was made, by which it was ascertained that the concern was indebted to him in a small sum, for which Walker gave his check with the indorsement that it was "in full of all accounts against Walker and Barnes."

It appears that on the dissolution of the firm of Walker and Barnes (which was composed of H. B. Walker and M. C. Barnes) the social assets were transferred to M. C. Barnes, their successor in business; and the note for $250 was found among his papers after his death.

The answer further averred that M. C. Barnes was the principal and J. A. Barnes surety in outstanding notes to the Peninsular Bank of Williamsburg, aggregating $3,000, a large part

of which respondent would have to pay by reason of the insolvency of the son's estate.

Upon these pleadings the question of indebtedness was referred to a commissioner in chancery, who allowed the store account, subject to a credit of $350, the amount of three checks introduced as payments; but he reported that the note had been paid. Upon exceptions, the court reformed the report in the manner indicated by the decree under review.

The answer denied the allegations of the petition, and, therefore, the burden of proof rested upon the appellee to establish his demands. In this, in our opinion, he has wholly failed. He relies on the day book and ledger of M. C. Barnes, which are admitted by the administrator to have been "loosely, badly and inaccurately kept" to prove the account.

Of the value of such evidence, the court, in *Weamer* v. *Juart* (Pa.), 72 Am. Dec. 627, says: "The rule that makes shop books evidence is founded in the necessities of justice. They are evidence manufactured by the shopkeeper himself, for his own purposes, and without any chance of supervision by his customer. In their best estate, therefore, it is proper to subject them, when offered in evidence, to severe scrutiny. But when they have acquired a general reputation for inaccuracy, when the shopkeeper has, through fraud or carelessness, made false entries or omitted true ones, so frequently as to destroy the confidence of his customers both in himself and his books, what reason is there for insisting that a jury shall trust them? How can private entries which a whole community have learned to discredit promote the ends of justice? They are no more worthy of the confidence of a court and jury than a witness whose reputation for truth and veracity is impeached."

In *Mathes* v. *Robinson* (Mass.), 41 Am. Dec. 505, 506, the court observes of such evidence: "It is original, but feeble and unsatisfactory evidence."

In Burr W. Jones on Evidence, section 590, the author remarks: "The courts have frequently expressed the opinion

that evidence of this character is quite unsatisfactory, and that it should be subjected to close scrutiny. It has been said that the practice of admitting such evidence had its origin in a kind of 'moral necessity,' and that 'such is the general course of business that no proof could be furnished of the frequent small transactions between men without resorting to the entries which they themselves have made in this form of accounts.' "

So also, in *Bailey* v. *Byrd,* 95 Va. 316, 321, 28 S. E. 329, 331, this court says: "It is conceded that the admission of such evidence is in derogation of the ordinary rules governing the admissibility of evidence, and rests, as it has been said, upon 'moral necessity,' and the operation of the exception is limited to the character of the dealing to which the law has ascribed *prima facie* a destitution of the ordinary means of proof, viz: The daily sale and barter of merchandise and other commodities; the performance of services and letting articles for hire; and probably the payment from time to time of money placed on deposit; circumstances so frequent in occurrence and so trivial in their individual amount that the procurement of formal proof could not be expected, and would not compensate for the time necessary for the purpose." See to same effect, *Kerr* v. *Love,* 1 Wash. 172.

Many items entering into the account in this case purport to be for money lent or advanced, and for goods delivered to others on orders of the debtor, which hardly fall within the rule making the self-serving entries in shop books admissible. But however that may be, the value of those books as evidence is impaired by the admission of the appellee that they were irregularly and inaccurately kept, and by the further circumstance that they fail to disclose credits for checks drawn by J. A. Barnes in favor of M. C. Barnes, and after his death traced to the hands of his administrator and lost.

In regard to the note for $250 it would seem to be a reasonable deduction from conceded facts that it had been paid. It is improbable, to say the least, that H. B. Walker upon a full

settlement of accounts between Walker and Barnes, and J. A. Barnes, would have drawn his check in favor of the latter for $2.35, the balance ascertained to be due, when in point of fact his note to the late firm for $250 was still unpaid; and it is equally improbable that a person in M. C. Barnes' straightened financial circumstances would have held this solvent note for more than a year before his death and made no attempt to collect it. From these considerations, fortified by the distinct admission of M. C. Barnes, made some two weeks before his death, that he was indebted to his father, we are of opinion that the weight of evidence sustains the contention of the appellant that he owes nothing on account of the demands asserted against him.

We are further of opinion that, even if these demands had been satisfactorily established as due and owing by the appellant, the decree against him for the amount of them would still be erroneous, in view of the agreed fact that the estate of M. C. Barnes, deceased, is insolvent, and that appellant is responsible, as surety, for M. C. Barnes, to the Peninsula Bank of Williamsburg for a sum largely in excess of appellee's claims. *Feazle* v. *Dillard,* 5 Leigh 31.

It follows from what has been said that the decree appealed from is erroneous and must. be reversed; and this court will make such decree as the Circuit Court ought to have made, dismissing the petition of appellee with costs.

*Reversed.*