CITIZENS STATE BANK, Respondent, vs. SCHMITZ and others, Appellants.

*November 6—December 3, 1935.*

For the appellants there was a brief by *Peter M. Huiras* of Port Washington, attorney, and *Corrigan, Backus, Ruppa, Bortin & Backus* of Milwaukee of counsel, and oral argument by *Mr. Walter D. Corrigan, Sr.,* and *Mr. Huiras.*

For the respondent there was a brief by *Detling & Whiffen* and *H. S. Humke,* all of Sheboygan, and oral argument by *Clarence F. Whiffen.*

FRITZ, J. Plaintiff's cause of action, as alleged in its complaint, is to recover $8,295 on a guaranty signed on December 29, 1933, by defendants, who were some of the stockholders of the State Bank of Random Lake, a Wisconsin banking corporation. That guaranty was given by the defendants to the plaintiff in consideration of the signing by the latter, as the holder of deferred certificates issued by the

State Bank of Random Lake, of a second stabilization agreement of that bank. Under that guaranty the defendants agreed to pay to the plaintiff on demand certain participating certificates issued, pursuant to the second stabilization agreement, by trustees to whom some of the bank's assets had been transferred for liquidation and the payment of the proceeds thereof to former depositors who held unpaid deferred certificates of deposit issued under a prior stabilization agreement.

On July 5, 1932, the defendants had likewise given a written guaranty to the plaintiff under which they had agreed to pay those deferred certificates; and prior thereto, on December 29, 1930, the defendants had given plaintiff their bond in the penal sum of $20,000 to guarantee that the State Bank of Random Lake would account to the plaintiff for all moneys deposited by it in that bank. Upon receiving that guaranty, on December 29, 1930, plaintiff deposited $20,000 at that bank; and it had that deposit there when it signed the first stabilization agreement under which it received deferred certificates for that $20,000 deposit. Payments made to it upon those certificates had reduced the balance owing thereon to $8,295 at the time of the second stabilization agreement; and that amount was unpaid under the participating certificates issued to plaintiff under the latter agreement, when the defendants defaulted under their guaranty of December 29, 1933, by failing to pay those certificates on demand. Defendants denied liability in an answer to which plaintiff demurred on the ground that it appeared upon the face thereof that it did not state facts sufficient to constitute a defense. The court sustained that demurrer. Upon this appeal from that order, the defendants claim that their answer states a defense on the ground that the guaranties were contrary to public policy, and unlawful by reason of facts alleged to substantially the following effect: That, with but one other excep-

tion, no guaranty was given by the bank's stockholders to any other depositor; that each of the defendants at all times material was financially responsible to a limited extent, but not more than was reasonably adequate to enable him to pay the double liability imposed by the law upon him as a stockholder of the bank; that the enforcement of the guaranty in suit would destroy the credit of each of the defendants, and would so destroy their financial stability as to make it impossible for them to pay double liability as such stockholders; that therefore the guaranties are void *ab initio* because it is contrary to public policy for stockholders of a bank to make such a private arrangement favoring a general depositor as against the interests of all other general depositors, and thus to undermine their financial stability by disabling them so that their lawful obligations and duties for the protection of all depositors cannot be met or enforced; that, notwithstanding that plaintiff was a party to the stabilization agreements and to the creation of the trust fund therein provided for, it secretly caused the defendants to enter into the guaranties, which were obtained to the disadvantage of other depositors, and unbeknown to them with one exception; that thereby plaintiff would be specially favored over all the other depositors of the same class, all of whom, including plaintiff, had entered into the reorganization agreement with the understanding and agreement that all depositors of the same class were to be treated alike and that none were to be favored; and that the secret execution of the guaranties made void the stabilization agreements because they were signed with the understanding that they were not to be binding unless signed by all, including the plaintiff, and that all signers were to be equally and proportionately treated.

In support of their claim that their allegations are sufficient to state a defense on the ground that the guaranties are contrary to public policy and therefore unlawful, the defendants'

first contention is that their personal guaranty was void because it was a direct violation of secs. 221.03 (7) (c) and 221.33, Stats. An examination of sec. 221.03, Stats. (including sub. (7) (c) thereof), discloses that its provisions and the scope and purposes thereof relate to the initial organization and incorporation of banks; and that, in order to safeguard against irregularities creeping into such organization in the promotional stages, the provisions in sub. (7) (c) of that section require the incorporators to file a declaration subscribed and sworn to by them, stating:

"That no individual, partnership, or corporation has, directly or indirectly, by any of them been paid any commission, compensation, or bonus, or been given any right or privilege of any kind; nor has any contract or agreement been entered into for payment at any future time of any commission, compensation, or bonus; nor has any promise or agreement, direct or indirect, been entered into to give or allow any person, partnership, or corporation any concession, contract, or privilege."

Since, by the very terms used in that subsection, the declaration required thereby is to be in respect to any commission, compensation, or bonus which has "been paid" or any right or privilege which has "been given," or any contract or agreement or promise which has "been entered into," that subsection is obviously intended to relate solely to transactions prior and up to the time of organization and incorporation. Such transactions are so far removed, in point of time, and are, therefore, so clearly distinguishable from the stockholders' guaranties involved herein, which were given long after, and without any relation to the bank's incorporation, that the provisions in that subsection, and such public policy as may be deemed to be indicated thereby, are manifestly not in point in this action.

The provision in sec. 221.33, Stats., upon which defendants also rely, reads: "No bank or bank officer shall give

preference to any depositor or creditor by pledging the assets of the bank as collateral security. . . ." That provision is not in point because no asset belonging to the State Bank of Random Lake was pledged as collateral security by virtue of the guaranties in question. On the one hand, there was no intention or attempt to thereby pledge or assign to the plaintiff, as security or otherwise, the double liability under sec. 221.42, Stats., of the defendants as stockholders of the bank. The only obligation imposed by those guaranties was personal on the part of each guarantor, acting in his individual capacity and solely on his own behalf without any effect upon, or diminution of his statutory liability as a stockholder. On the other hand, that stockholders' contingent double liability under sec. 221.42, Stats., never becomes an asset of the bank in any respect. Under the express.terms of that section, that liability is created solely for the benefit of the creditors of the bank. It accrues only "upon the commissioner of banking taking possession of the property and business of such bank under the provisions of the statutes," and, upon the occurrence of that event, the enforcement thereof by the commissioner is solely for the benefit of the bank's creditors. There is no stockholder's liability under that section in favor of the bank in the capacity of a creditor of a stockholder. (*Banking Comm. v. Bitker,* 216 Wis. 497,. 499, 257 N. W. 616.) It follows that, because the assumption of personal liability by the voluntary guaranties under consideration, is not within the scope of secs. 221.03 (7) (c) and 221.33, Stats., neither of them affords any basis for holding the guaranties contrary to any public policy indicated thereby.

Defendants further contend that the guaranties are contrary to public policy and void because of the rule that a bank may not, under its general powers, pledge any of its assets to secure its deposits. (See *Commercial Banking and Trust*

*Co. v. Citizens' Trust & G. Co.* 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950; *Farmers' & Merchants' State Bank of Ogilvie v. Consolidated School District No. 3,* 174 Minn. 286, 219 N. W. 163; *State Bank of Commerce of Brockport v. Stone,* 261 N. Y. 175, 184 N. E. 750; *Foster v. City of Longview* (Tex. Com. App.), 26 S. W. (2d) 1059; *Divide County v. Baird,* 55 N. D. 45, 212 N. W. 236; *Strain v. Potter County* (S. D.), 256 N. W. 147; and *Arkansas-Louisiana Highway Imp. Dist. v. Taylor,* 177 Ark. 440, 6 S. W. (2d) 533.) That rule is not applicable herein because, for reasons stated above, the guaranties did not constitute or result in any pledge by the bank of any of its assets. As the statutory stockholders' double liability was created solely for the benefit of the bank's creditors, and was never to become an asset of the bank, no effective pledge thereof could be made by either the bank or its stockholders. It is true that the assumption of other obligations by stockholders may impair their ability to discharge their statutory double liability for the benefit of a bank's creditors. However, as there are no provisions or inhibitions, in the statutes or under the common law to avoid that possible consequence, there is no legal basis because of which it has ever been held, so far as we are informed, that the assumption of personal liability by bank stockholders under such guaranties as are involved herein, is contrary to public policy. On the contrary, that that consequence has not been considered an evil because of which the giving of such guaranties should be deemed contrary to public policy, is demonstrated by the fact that there has been no legislative or judicial declaration or intimation to that effect, although for many years it has been customary in this state for officers, directors, and stockholders of banks to sign such guaranties. Most of the bonds required by the statutes for public deposits were probably signed by stockholders. In fact, the practice, including the giving of

such guaranties as are involved herein, was so common, that the state banking department and its examiners must have been aware of it. If the giving of such guaranties had appeared to be prejudicial to the interests of the ordinary depositors and bad practice or poor banking, so as to render the giving of them contrary to public policy, the banking department and the legislature would undoubtedly have taken cognizance of that fact, and the banking laws would have been amended to remedy the situation.

Defendants also contend that as they, while stockholders of the bank, had personally guaranteed its indebtedness to plaintiff as a depositor, the reports and publications required of the bank by the statutes were actually false because, while the plaintiff's claim against the bank was by reason of a deposit, "it became [by virtue of the guaranty] a deposit of a special nature which was indirectly and positively the equivalent of a liability." No such change was effected, as between the bank and the plaintiff, in respect to the nature of the deposit or the bank's liability thereon, by virtue of the unofficial personal guaranties given to the plaintiff by the defendants in their individual capacities. Consequently, as the guaranties by the defendants in their personal capacity did not in any way increase or alter the bank's obligation to the plaintiff, there was no falsification in its reports or publications because of its omission to report those guaranties. Likewise, as no reports were required or published as to the assets and liabilities of the stockholders of the bank, or their personal financial ability to discharge their obligations as stockholders, or otherwise, there was no falsification or deception because of the failure to publish or disclose the existence of defendants' obligation by reason of those guaranties.

*By the Court*—Order affirmed.