PRESENT: All the Justices

CHARLES R. CHAMBERLAIN

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
APRIL 13, 2017

v. Record No. 160349

MARSHALL AUTO & TRUCK CENTER, INC.

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

In this appeal, we consider whether the Circuit Court of Fauquier County ("circuit court")

erred by holding that a surety who was an accommodation guarantor of a promissory note was

not entitled to judgment against the maker of the note under Code § 49-27 upon default by the

maker and seizure of collateral by the lender.

I. Facts and Proceedings

On January 5, 2015, Charles R. Chamberlain ("Chamberlain") filed a complaint against

Marshall Auto & Truck Center, Inc. ("Marshall") in the circuit court. The complaint alleged that

Marshall executed a promissory note ("Note") in the amount of $950,000 in favor of Middleburg

Bank ("Middleburg"), and that Chamberlain executed a guaranty ("Guaranty") of that Note.

Marshall failed to make payments to Middleburg, and the bank withdrew funds from

Chamberlain's account to satisfy Marshall's obligations under the Note. Chamberlain maintains

that, pursuant to Code § 49-27, he is entitled to judgment against Marshall for the amount taken

by the lender from his account and applied in satisfaction of Marshall's obligations under the

Note. Chamberlain demanded $50,614.94, plus interest.

Marshall filed an answer, which admitted the validity of the Note and that Chamberlain

executed the Guaranty. As an affirmative defense, however, Marshall asserted that "[a]ny and

all payments, if any, by Chamberlain constituted a gift."

At a bench trial on November 2, 2015, evidence was presented demonstrating that in 2007 Marshall executed the Note in favor of Middleburg to obtain a loan. Payment of the Note was secured, in part, with the Guaranty. As collateral for the loan, Chamberlain provided a $50,000 certificate of deposit ("CD") on account with Middleburg and further took out a $1 million life insurance policy on his life, naming the bank as beneficiary.

On numerous occasions between 2009 and 2011, Marshall failed to make its scheduled payments on the Note. Consistent with the Guaranty, Middleburg withdrew a total of $50,614.94 from Chamberlain's CD and applied those funds in partial satisfaction of Marshall's payment obligations.

At trial, Chamberlain testified that he executed the Guaranty because he "wanted to help out" Marshall's sole owner and president, Manzar Asjodi ("Asjodi"). The two were "intimately involved." Chamberlain believed that Asjodi would be unable to obtain a new loan without his assistance. Chamberlain "was not looking to make a profit" and he did not consider the arrangement to be a business opportunity. Instead, Chamberlain testified that he placed the CD on deposit with Middleburg "[t]o help [Asjodi] gain loan approval."

Chamberlain further testified that the banker informed him and Asjodi that the CD was intended only as a "backstop" in the event that Marshall missed payments. According to Chamberlain, the suretyship arrangement "was supposed to be a low-risk situation." He "did not expect payments would not be made." For her part, Asjodi testified that "the purpose of that CD was whenever [Marshall] needs money we can go take that money." At some point after Chamberlain executed the Guaranty, his romantic relationship with Asjodi ended. The two were no longer communicating regularly when the bank began making the withdrawals from the CD.

2

After presentation of the evidence, the circuit court announced its ruling from the bench. First, the court found that "the gift was putting the CD up," and that Chamberlain did so because of the "romantic relationship that he was having with [Asjodi]." Second, the court found that Chamberlain wanted to help Asjodi and did not file suit until "everything went sour between the parties." Third, the lack of documentation between the parties to "make it very clear as to who owed what to whom," suggested that Chamberlain "did it as a friend to another friend. It wasn't a business transaction and, indeed, it was a gift." For these reasons, the circuit court ruled "that the Plaintiff recover nothing from the Defendant and that the Defendant have a verdict in its favor." Chamberlain filed a motion for reconsideration, which the circuit court denied. Chamberlain then appealed to this Court, and we granted his appeal on the following assignment of error:

> 1. The trial court erred in ordering that the plaintiff recover nothing and entering a verdict in favor of the defendant.
>
> a. The trial court erred in failing to apply § 49-27 of the Code.
>
> b. The trial court erred in finding a gift.

## II. Analysis

### A. Standard of Review

Statutory interpretation presents a question of law, which we review de novo. *McGrath v. Dockendorf*, 292 Va. 834, 837, 793 S.E.2d 336, 337 (2016). We likewise review the circuit court's application of law to undisputed facts de novo. *Johnson v. Hart*, 279 Va. 617, 623, 692 S.E.2d 239, 242 (2010). The circuit court's findings of fact, however, will not be disturbed unless they are plainly wrong or without supporting evidence. *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 394, 732 S.E.2d 676, 682 (2012).

B. Code § 49-27

An accommodation or gratuitous surety is someone who assumes secondary liability on an obligation for the benefit of the principal rather than for their own profit. *See Southwood Builders, Inc. v. Peerless Ins. Co.*, 235 Va. 164, 168-69, 366 S.E.2d 104, 106-07 (1988) (noting that accommodation sureties "deriv[e] no benefit from the transaction") (quoting *Kirschbaum v. Blair*, 98 Va. 35, 40, 34 S.E. 895, 897 (1900)). In Virginia, "the accommodation surety has always been one of the favorites of the law." *Dickenson v. Charles*, 173 Va. 393, 406, 4 S.E.2d 351, 356 (1939) (quoting *Scott v. Norton Hardware Co.*, 54 F.2d 1047, 1051 (4th Cir. 1932)). Compensated sureties, by contrast, act "to promote their own interests, and are to be judged accordingly." *Southwood Builders*, 235 Va. at 169, 366 S.E.2d at 107 (quoting *C. S. Luck & Sons v. Boatwright*, 157 Va. 490, 494-95, 162 S.E. 53, 54 (1932)). Compensated or not, however, "[i]t is elementary that one secondarily liable on an obligation . . . who has satisfied the demands of the holder . . . is entitled to reimbursement from the party primarily liable." *Dickenson*, 173 Va. at 400, 4 S.E.2d at 353.

A surety's or guarantor's right to reimbursement is founded "upon the plainest principles of natural reason and justice." *Id*. (quoting *Kendrick v. Forney*, 63 Va. (22 Gratt.) 748, 749-50 (1872)). The common law has long recognized this right, which is now codified by Code § 49-27. In pertinent part, that statute states:

> If any person liable as . . . guarantor . . . pay[s], in whole or in part, such note . . . the person having a right of action for the amount so paid may . . . obtain a judgment or decree against any person against whom such right of action exists for the amount so paid, with interest from the time of payment, and five per centum damages on such amount. The person so paying, in whole or in part . . . any such note . . . shall, by operation of law, in addition to the remedy above provided, be substituted to and become the

4

owner of all of the rights and remedies of the creditor for the enforcement and collection of the amount or amounts so paid, and shall be deemed the assignee thereof.

Code § 49-27.

On appeal, Marshall argues that Code § 49-27 does not apply because Chamberlain executed the Guaranty as a gift. Marshall maintains that the circuit court's finding that Chamberlain executed the Guaranty "to help out" Asjodi precludes him from exercising any right to reimbursement under Code § 49-27. We do not agree. Code § 49-27 makes no distinction between compensated and uncompensated sureties. On the contrary, the right to reimbursement is expressly available to "*any* person liable as [a] . . . guarantor." Code § 49-27 (emphasis added).

Chamberlain testified that he put the CD on deposit with Middleburg to "help [Asjodi] gain loan approval," but the CD was not itself a "gift." To the extent the facts demonstrate any gift at all, that gift was Chamberlain's decision to act as an accommodation surety rather than a compensated surety. Chamberlain merely made it possible for Marshall to gain loan approval by putting the CD on deposit as collateral.

Neither Chamberlain nor Asjodi testified that Chamberlain agreed not to seek reimbursement if the CD was drawn down by Middleburg. Indeed, the record does not contain any evidence that Chamberlain waived his rights under Code § 49-27. The undisputed evidence instead demonstrates that Chamberlain assumed secondary liability as a guarantor of the Note and that Middleburg withdrew funds from Chamberlain's CD to partially satisfy the Note. Taken together, these facts triggered Chamberlain's right to reimbursement "for the amount so paid, with interest from the time of payment, and five per centum damages on such amount."

5

Code § 49-27.  Because there is no evidence in the record that Chamberlain made a gift of the CD or waived his statutory rights under Code § 49-27, he is entitled to judgment.

### III.  Conclusion

For the reasons stated, we will reverse the judgment of the circuit court and remand for a determination of the amount due to Chamberlain under Code § 49-27.

*Reversed and remanded.*

6